UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAN E.C.,<br>Plaintiff,<br>v.<br>WARDEN OF THE CENTRAL VALLEY ANNEX, et al.,<br>Respondents. | No. 1:26-cv-08198-TLN-JDP<br>A# 098-283-282<br>**RELEASE ORDER** |

This matter is before the Court on pro se Petitioner Abrahan E.C's[1] ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). (ECF No. 1.) Respondents filed a response and supplemental briefing. (ECF Nos. 11, 18.) For the reasons set forth below, the Petition (ECF No. 1) is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

This matter arises out of Petitioner's constitutional challenge to his civil immigration detention. Petitioner first entered the United States on or around May 2, 2004 at or near Laredo, Texas. (ECF No. 11 at 18.) On May 2, 2004, Petitioner was issued a Notice to Appear ("NTA") pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), for being a noncitizen in the United States "without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (*Id.*) Petitioner voluntarily departed the United States on June 3, 2004. (*Id.* at 27.)

Petitioner entered the United States again on or around July 22, 2004 at or near Brownsville, Texas. (*Id.* at 35.) Petitioner was, again, issued a NTA pursuant to INA § 212(a)(6)(A)(i). (*Id.*) After failing to provide an address at the time the NTA was issued and failing to appear at a September 16, 2004 hearing before an Immigration Judge ("IJ"), the IJ issued an order of removal against Petitioner. (*Id.* at 39.)

Respondents state Petitioner was arrested by Immigration and Customs Enforcement ("ICE") pursuant to the final order of removal on May 11, 2010, then released on an Order of Supervision ("OSUP") on May 17, 2010. (*Id.* at 2.) Respondents explain Petitioner was thereafter "released into ICE custody" after arrest by local authorities on May 20, 2011 and removed from the United States on or about June 16, 2011. (*Id.*) Respondents state ICE encountered Petitioner in a local jail on October 21, 2011 and reinstated his final order of removal.[2] (*Id.*)

On November 5, 2013, an IJ granted Petitioner's application for withholding of removal under INA § 241(b)(3)(A). (ECF No. 11 at 85.) The IJ found:

> [Petitioner] has established a pattern and practice of persecution of chronically, severely mentally ill individuals who require

---

[2] In the Court's October 7, 2026 Minute Order, it explicitly ordered Respondents to include "Petitioner's Form I-213 for each immigration encounter; any orders of release, detention, or bond; any custody determinations, warrants, or notices; and any other portions of Petitioner's A-File relevant to the determination of the issues presented in the Petition." (ECF No. 6.) Respondents note the records they provide are "the available records" and other records could not be obtained due to "a recent fire at the local ERO office." (ECF No. 11 at 1 n.1.)

> hospitalization, and that he is a member of this group and will more likely suffer the same persecution if returned to [country of citizenship]. The [Petitioner] has shown that he suffers from chronic paranoid schizophrenia so severe that he is institutionalized.

(*Id.* at 80.) On April 8, 2014, Petitioner was placed on an OSUP. (*Id.* at 42, 45–46.)

Petitioner has been in the custody of the Department of Homeland Security ("DHS"), ICE's parent agency, since approximately April 17, 2026. (*Id.* at 2, 123–24.) On April 17, 2026, DHS issued a Notice of Revocation of Release, revoking the OSUP issued over ten years earlier, due to a change in circumstances. (*Id.* at 5, 117–18.) The Notice of Revocation of Release lists Petitioner's changed circumstances as "ICE [] seeking a travel document to effect [Petitioner's] expeditious removal to 3rd Country." (*Id.* at 117–18.) ICE has a warrant for Petitioner's removal dated April 17, 2026 which states he is subject to removal pursuant to "241(a)(5) of the INA," 8 U.S.C. § 1231(a)(5).[3] (*Id.* at 133.)

On May 12, 2026, DHS filed a motion to reopen IJ jurisdiction "for the purpose of terminating the prior grant of withholding of removal under INA § 241(b)(3)." (*Id.* at 48–60, 114 (capitalization omitted).) The motion included a lengthy recitation of Petitioner's criminal history and argued Petitioner, "having been convicted of a particularly serious crime, is a danger to the community of the United States and is statutorily ineligible for withholding of removal. As such, it should be terminated pursuant to 8 C.F.R. §§ 1208.24(f) [and] 1208.24(b)(3)."[4] (*Id.* at 52–56.) DHS's motion to reopen IJ jurisdiction was denied. (*Id.* at 2, 114.)

Respondents now seek to remove Petitioner to Mexico. (*Id.* at 5.) On July 21, 2026, DHS issued Petitioner a Notice of Removal to Mexico. (*Id.* at 120.) Petitioner refused to sign. (*Id.*) There is no record of Petitioner receiving an opportunity to make a fear-based claim for removal to Mexico or any third country. Petitioner has now been detained for over six months. (ECF No. 11 at 2, 123–24.)

---

[3] Unless otherwise specified, subsequent references to statute are to Title 8 of the United States Code.

[4] Petitioner was found guilty of resisting an officer without violence, battery, petit theft, trespass, and battery on a person 65 or older. (*Id.* at 50–51, 53, 86–101.)

On October 5, 2026, while detained at the Central Valley Annex Detention Facility, Petitioner filed the instant Petition for Writ of Habeas Corpus.[5] (ECF No. 1.) Respondents responded on October 14, 2026. (ECF No. 11.) The Court ordered Respondents to file supplemental briefing "addressing the likelihood of Petitioner's removal to Mexico in the reasonably foreseeable future, their efforts toward removal, and any barriers. *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001)." (ECF No. 17.) Respondents filed their supplemental brief on November 17, 2026. (ECF No. 18.)

Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (ECF No. 1 at 5.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner puts forth four claims: (1) his detention violates Fifth Amendment procedural due process; (2) his detention violates Fifth Amendment substantive due process; (3) his re-arrest constitutes an unreasonable seizure in violation of the Fourth Amendment; and (4) if Petitioner is a *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973 (N.D. Cal. 2025), class member, then his detention

[5] The same day, Petitioner filed a motion for a temporary restraining order, motion to proceed in forma pauperis, and a motion for appointment of counsel. (ECF Nos. 2, 3, 4.)

violates the Administrative Procedure Act.[6] (ECF No. 1 at 26–30.) Respondents argue: (1) Petitioner's detention is authorized under § 1231(a); (2) removal is foreseeable and Petitioner's non-cooperation controls the duration of his detention; (3) detention is constitutional as applied to Petitioner; (4) Petitioner's conditions of confinement and medical claims are not cognizable; and (5) immediate release is not the proper remedy for prolonged detention. (ECF No. 11 at 3–7.)

Furthermore, in their supplemental brief, Respondents argue Petitioner has not "demonstrated there is no significant likelihood of removal in the reasonably foreseeable future," and there is a "notice of intent to remove [him] to Mexico." (ECF No. 18 at 1–2.) Respondents state ICE is "unable to make concrete removal plans at this time" because this Court ordered Respondents not to transfer Petitioner out of this District after he filed the Petition. (*Id.* at 2; *see* ECF No. 6.)

First, the Court reviews what subsection of § 1231 is applicable to Petitioner's detention. Second, the Court reviews Petitioner's Fifth Amendment due process claim.

A. Detention Authority

8 U.S.C. § 1231(a) governs detention of a noncitizen after a final order of removal has been issued. Under § 1231(a), once a removal order is final, the government must "remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). During the initial ninety-day removal period, the government shall detain the noncitizen. 8 U.S.C. § 1231(a)(2)(A). However, under § 1231(a)(6), certain noncitizens may be detained beyond the removal period, including "[noncitizens] who have been ordered removed, namely, inadmissible [noncitizens], criminal [noncitizens], [noncitizens] who have violated their nonimmigrant status conditions, and [noncitizens] removable for certain national security or foreign relations reasons, as well as any [noncitizen] 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" *Zadvydas*, 533 U.S. at 688 (citing § 1231(a)(6)).

---

[6] The Court determines Petitioner is unlawfully detained in violation of Fifth Amendment Due Process and must be released. Therefore, in the interest of judicial efficiency, the Court declines to review Petitioner's other bases for relief.

Here, Respondents argue Petitioner is subject to § 1231(a)(2) (detention within the removal period) rather than § 1231(a)(6) (detention beyond the removal period) because Petitioner's removal period was extended when he refused to cooperate with the removal order to Mexico. (ECF No. 11 at 3–4.) Therefore, Respondents contend, Petitioner's detention is mandatory. (*Id.*) However, Respondents also state "[t]he record reflects: (1) a final removal order since September 16, 2004[.]" (*Id.* at 2.) It is not clear to the Court how Petitioner could be in the ninety-day removal period in 2026 following his order of removal becoming final in 2004. As relevant here, "[t]he removal period begins on . . . [t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B). Petitioner's order of removal became final in 2004 and, thus, the ninety-day period ran in 2004. The removal period requiring mandatory detention has long since passed.

Even so, Respondents argue Petitioner's "non-cooperation" extends the removal period and permits continued custody. (ECF No. 11 at 1, 4.) The Court disagrees. The Court again finds, like many in this District, that the argument regarding "failure to cooperate" with removal to a third country fails because there is no obligation for a noncitizen to cooperate with their removal to a third country. *See Ramirez-Cespedes v. Chestnut*, No. 1:26-cv-5506-TLN-JDP, 2026 WL 2280956, at *3 (E.D. Cal. Aug. 7, 2026) (citing *Obando Vargas v. Blanche*, No. 1:26-cv-5343-DAD-AC, 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) (rejecting respondents' argument that petitioner may be detained indefinitely "because [he] is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to")), *report and recommendation adopted sub nom. Walfrido R.C. v. Chestnut*, No. 1:26-cv-5506-TLN-JDP, 2026 WL 2413519 (E.D. Cal. Aug. 18, 2026); *Ruiz-Acosta v. Cent. Valley Annex*, No. 1:26-cv-04371-DAD-JDP, 2026 WL 1846727, at *3 (E.D. Cal. June 26, 2026).

Thus, Petitioner is detained beyond the removal period, and his detention is governed by 8 U.S.C. § 1231(a)(6).

### B. Fifth Amendment *Zadvydas* Claim

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d

976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

In *Zadvydas*, the Supreme Court addressed how long a noncitizen may be detained pursuant to § 1231(a)(6). 533 U.S. 678. The Supreme Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Supreme Court recognized a presumptively reasonable six-month period of detention after a removal order has been issued, "[a]nd for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701. If a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the noncitizen meets this burden, the government must "introduce evidence to refute that assertion." *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003).

However, the burden-shifting framework does not apply here. "Numerous courts have held . . . that the burden-shifting scheme of *Zadvydas* is only applicable to those noncitizens who had been detained and never released following a final order of removal." *Martinez v. Bondi*, No. 1:25-cv-01633-EFB, 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025) (citing *Zadvydas*, 533 U.S. at 701). "Where . . . petitioner was issued a final order of removal, detained, and subsequently released and then redetained, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed' pursuant to 8 C.F.R. § 241.13." *Id.* (citation omitted); *see also Vu v. Noem*, No. 1:25-cv-01366-KES-SKO, 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025) (collecting cases). Petitioner was issued a final order of removal and later detained, then ICE released Petitioner on an OSUP. (ECF No. 11 at 2.) He was re-detained on April 17, 2026. (ECF No. 18 at 1.) Therefore, the burden is on Respondents to show a significant likelihood that Petitioner may be removed.

Here, Respondents have made no showing that there is a significant likelihood Petitioner will be removed to Mexico or any other country. Rather, Respondents argue there is a notice of

ICE's intent to remove to Mexico and the do-not-transfer order prohibits ICE from making removal plans. (*Id.* at 2.) Respondents offer no evidence Petitioner has a travel document or will receive a travel document from Mexico or any other country anytime in the reasonably foreseeable future. *See Akbarian v. Warden*, No. 5:25-cv-03584-ODW (AGRX), 2026 WL 127941, at *3 (C.D. Cal. Jan. 12, 2026) (citing *Min v. Santacruz*, No. 2:25-cv-10971-MEMF (ASx), 2025 WL 3295564, at *4 (C.D. Cal. Nov. 26, 2025) (finding petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future because "[n]o travel documents have been applied for, let alone secured")); *Belach v. Marin*, No. 5:25-cv-03452-SPG (RAOx), 2026 WL 75920, at *4 (C.D. Cal. Jan. 5, 2026) (concluding petitioner "has shown good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future," as petitioner "lacks valid travel documentation" and "has been unable to obtain a Russian passport"). Respondents likewise provide no evidence Mexico will accept Petitioner if he does consent to third-country removal. Respondents present no evidence of an agreement with Mexico, nor identification of policies, procedures, or plans for removal. (*See* ECF Nos. 11, 18.)

On the record before this Court, Respondents fail to show ICE made a proper determination that there was a significant likelihood that Petitioner may be removed in the reasonably foreseeable future before re-detaining him. Therefore, Petitioner's continued detention is no longer authorized by § 1231(a)(6) and is unlawful. *Zadvydas*, 533 U.S. at 699.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Abrahan E.C. (A# 098-283-282) from custody on the same conditions of his prior release. At the time of release, Respondents must provide a copy of this Order to Petitioner and return all of Petitioner's documents and possessions. Respondents must file a **notice certifying compliance** with this provision of the Court's Order **within two (2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner absent a travel document

to the country of removal and compliance with statutory and constitutional protections, including a minimum of seven-days' pre-deprivation notice and strict compliance with the requirements of 8 C.F.R. §§ 241.4(l), 241.13(i).

3. Respondents are further ENJOINED from removing Petitioner to a third country until they first provide a minimum of ten-days' notice of such intent and a meaningful opportunity for Petitioner to assert a fear-based claim for relief from removal to that country. If Petitioner asserts a fear-based claim, Respondents must provide Petitioner a meaningful opportunity to be heard before an immigration judge prior to removal.

4. Petitioner's Motion to Proceed in Forma Pauperis is GRANTED. (ECF No. 2.)

5. Petitioner's Motion for Temporary Restraining Order is DENIED as moot. (ECF No. 3.)

6. **The Clerk of Court is directed to serve Central Valley Annex Detention Facility with a copy of this Order.**

7. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE